DOA
2/26/21

AO 443 (Rev. 5/23/21) Arrest

# UNITED STATES DISTRICT COURT

RECEIVED U.S. MARSHALS
IM/FL JACKSONVILLE

for the

2021 FEB 24  PM 3: 02

Middle District of Florida

United States of America
v.

JEFFREY ALAN SIEGMEISTER
*Defendant*

)
)
)
)
)
)

Case No.  3:21-cr-16-MMH-JBT

21-04068-MJ-001-PCT-CDB

## ARREST WARRANT

To:   Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*,   JEFFREY ALAN SIEGMEISTER

who is accused of an offense or violation based on the following document filed with the court:

☒ Indictment      ☐ Superseding Indictment      ☐ Information      ☐ Superseding Information   ☐ Complaint
☐ Probation Violation Petition   ☐ Supervised Release Violation Petition      ☐ Violation Notice  ☐ Order of the Court

This offense is briefly described as follows:

Conspiracy to Use Facility of Commerce for Unlawful Activity, Conspiracy to Interfere with Commerce by Extortion, Interference with Commerce by Extortion, Conspiracy to Commit Federal Program Bribery, Federal Program Bribery, Wire Fraud, Filing a False Tax Return, in violation of 18 U.S.C. § 371, 18 U.S.C. § 1951(a), 18 U.S.C. §§ 1951(a) and 2, 18 U.S.C. §§ 666(a)(1)(B) and 2, 18 U.S.C. §1343, 26 U.S.C. § 7206(1).

Date:  2/24/21

City and state:  Jacksonville, FL

*Issuing officer's signature*

ELIZABETH WARREN, Clerk, United States District Court
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ |
| at *(city and state)* _____ |
| Date: _____     |
| *Arresting officer's signature* |
| *Printed name and title* |

**FILED IN OPEN COURT**

2·24·2021

CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

JEFFREY ALAN SIEGMEISTER
MARION MICHAEL O'STEEN

CASE NO. 3:21-cr- 16-MMH-JBT

18 U.S.C. § 371
18 U.S.C. § 1951
18 U.S.C. § 1952
31 U.S.C. § 5331
18 U.S.C. § 666
18 U.S.C. § 1343
26 U.S.C. § 7206

## INDICTMENT

The Grand Jury charges:

### COUNT ONE
**(Conspiracy to Use Facility of Commerce for Unlawful Activity)**

#### A.   Introduction

At all times material to this Indictment:

1.     JEFFREY ALAN SIEGMEISTER ("SIEGMEISTER") was a resident of the Middle District of Florida who practiced law in the Middle District of Florida and elsewhere and was a licensed member of the Florida Bar. From on or about January 16, 2013, through on or about December 19, 2019, SIEGMEISTER served as the elected State Attorney for the Third Judicial Circuit of Florida ("the State Attorney"). In his position as the State Attorney,

SIEGMEISTER had the authority to perform official acts, that is, to bring, reduce, and dismiss criminal charges, for the State Attorney's Office for the Third Judicial Circuit of Florida ("the State Attorney's Office"). Prior to becoming the State Attorney, SIEGMEISTER was a private attorney in private practice in Lake City, Florida.

2.     MARION MICHAEL O'STEEN ("O'STEEN") practiced law in the Middle District of Florida and elsewhere and was a licensed member of the Florida Bar. O'STEEN maintained a law office in Dixie County, Florida.

3.     The State Attorney's Office was an agency of the State of Florida, covering counties in the Middle District of Florida, and elsewhere, including Columbia, Dixie, Hamilton, Lafayette, Madison, Suwannee, and Taylor Counties. The State Attorney's Office received annual benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, and other form of Federal assistance.

4.     From at least as early as on or about June 12, 2017, and continuing through at least on or about April 16, 2018, O'STEEN represented an individual, "Client A," with respect to a criminal case in which Client A was charged with attempted first degree murder, arson, possession of a firebomb, and violation of domestic violence injunction, in the Circuit Court of the Third Judicial Circuit, in and for Columbia County, Florida, in the Middle District of

Florida.

5.     From at least as early as on or about February 26, 2018, and continuing through at least on or about September 12, 2018, O'STEEN represented an individual, "Client B," with respect to a criminal case in which Client B was charged with keeping a gambling house, in the Circuit Court of the Third Judicial Circuit, in and for Columbia County, Florida, in the Middle District of Florida.

6.     From at least as early as on or about January 23, 2019, and continuing through at least on or about July 15, 2019, O'STEEN represented an individual, "Client C," with respect to a criminal case in which Client C was charged with battery and trespass after warning, in the Circuit Court of the Third Judicial Circuit, in and for Dixie County, Florida.

### B.     The Conspiracy

7.     From an unknown date but at least in or around November 2017, and continuing through on or about May 16, 2019, in the Middle District of Florida and elsewhere, the defendants,

**JEFFREY ALAN SIEGMEISTER**
**and**
**MARION MICHAEL O'STEEN,**

did knowingly and willfully combine, conspire, confederate, and agree with one another and others, both known and unknown to the Grand Jury, to use a

facility in interstate and foreign commerce, namely a telephone and wire, to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, that is, bribery, in violation of Florida Statute § 838.015; and extortion, in violation of Florida Statute § 836.05, and to perform and attempt to perform an act to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment and carrying on of the above unlawful activity, in violation of 18 U.S.C. § 1952(a)(3).

## C.   Manner and Means of the Conspiracy

8.      The manner and means by which the conspirators carried out the conspiracy included, among other things:

a.      It was part of the conspiracy that O'STEEN would and did request official acts from SIEGMEISTER in his official capacity as the State Attorney, to include favorable disposition of charges filed against criminal defendants O'STEEN represented.

b.      It was further part of the conspiracy that SIEGMEISTER would and did use his position as the State Attorney to solicit, accept, and agree to accept, bribes in return for the favorable disposition of criminal cases

c.      It was further part of the conspiracy that SIEGMEISTER would and did request and solicit O'STEEN to purchase a bull from

4

SIEGMEISTER's herd of Florida Braford bulls in exchange for SIEGMEISTER's favorable disposition of criminal charges against O'STEEN's clients upon O'STEEN's request.

   d. It was further part of the conspiracy that SIEGMEISTER would and did solicit campaign contributions from O'STEEN and others in exchange for the specific official action of favorable disposition of charges filed against O'STEEN's clients.

   e. It was further part of the conspiracy that SIEGMEISTER would and did agree with O'STEEN to delay resolving cases in order to enable O'STEEN to obtain additional "fees" from at least one of O'STEEN's clients.

   f. It was a further part of the conspiracy that the conspirators would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purposes of the conspiracy and the acts committed in furtherance thereof.

### D. <u>Overt Acts</u>

  9. In furtherance of the conspiracy, the defendants committed the following overt acts in the Middle District of Florida and elsewhere:

   a. In or around June 2017, O'STEEN was retained to represent Client A, who was charged by the State Attorney's Office with attempted first degree murder, arson, possession of a firebomb, and violation of

domestic violence injunction.

b.     On or about November 8, 2017, at approximately 2:51 p.m., O'STEEN sent a text message to SIEGMEISTER in furtherance of his request for leniency for O'STEEN's client, Client A, claiming that the victim did not want to seek prison time for Client A.

c.     On or about November 9, 2017, at approximately 10:48 a.m., SIEGMEISTER replied with a text message to O'STEEN that said, "When Are you and [V.] and [S.] and [M.] and everybody else going to buy one of my registered bulls?"

d.     On or about December 6, 2017, at approximately 10:48 a.m., O'STEEN sent a text message to SIEGMEISTER with a photograph of an email from SIEGMEISTER's subordinate Assistant State Attorney to O'STEEN offering a five-year prison plea deal for O'STEEN's client, Client A.

e.     On or about December 6, 2017, at approximately 11:09 a.m., SIEGMEISTER replied with a text message to O'STEEN that read, "I'm driving but I'll deal with that I'm going to Lake City now."

f.     On or about April 16, 2018, SIEGMEISTER and O'STEEN appeared in the Circuit Court of the Third Judicial Circuit, in and for Columbia County, Florida, for Client A's case. During that court appearance, Client A pleaded no contest to the charges of arson, possession of

6

a firebomb, and violation of domestic violence injunction, for which SIEGMEISTER and O'STEEN negotiated a plea that included the state dismissing the attempted first degree murder charge and resulted in Client A being sentenced to serve 13 months in the Florida Department of Corrections, followed by eight years of probation.

g.      On or about April 16, 2018, at approximately 5:40 p.m., SIEGMEISTER sent O'STEEN a text message with four photographs of SIEGMEISTER's bulls.

h.      On or about February 26, 2018, O'STEEN was retained to represent Client B, who had been charged by the State Attorney's Office with keeping a gambling house, a felony offense.

i.      On or about August 14, 2018, C.L., a legal assistant from O'STEEN's law firm, sent Client B an email at O'STEEN's direction that said, "Michael wanted me to follow up to advise he has set up a meeting with Jeff [SIEGMEISTER], the State's Attorney for this Friday. If you are wanting a different result about this issue to go the other way you & Michael discussed then he needs to know you are serious about what it takes to do so before he goes to that meeting."

j.      On or about August 16, 2018, at approximately 12:29 p.m., SIEGMEISTER sent a text message to O'STEEN that said, "We still on for

tomorrow? If yes, meet me at the Brown lantern at 11:30 or so. After lunch I'll drive you out to my farm and show you my bulls and cows. I'll take you back to your vehicle when we're done."

       k.    On or about August 16, 2018, O'STEEN asked Client B, during a recorded telephone call, if, with regard to his criminal case pending before the State Attorney's Office, Client B could "come up with the entire $30,000 by next week." O'STEEN also asked Client B to meet with O'STEEN before O'STEEN met with SIEGMEISTER "so we can make, I want, I want ah look at you so we're very clear on what I'm gonna go propose."

       l.    On or about August 17, 2018, at approximately 11:35 a.m., O'STEEN told Client B, during a recorded in-person meeting, "So you're saying, for example, if I gave you a number of $60,000, and I make yours go away completely, and you're out of here, handle that without any agreement, you're after a number? I don't know if it'll fly or not," and "So you're saying you can probably come up with more than 30 if I can make yours go away without an agreement, is that what you are telling me?"

       m.    On or about August 17, 2018, at approximately 1:19 p.m., SIEGMEISTER texted O'STEEN, "Meet me at Walmart."

       n.    On or about August 17, 2018, at approximately 3:02 p.m., after meeting with SIEGMEISTER in Live Oak, Florida, O'STEEN told Client

B during a recorded telephone conversation, "I can make everything go away all, your brothers, the other two *nolle pros* with you sign an agreement, pay their cost of investigation, you leave, you will not have to report but one time, uh, ah, I need, I need $75,000 and everything goes away and you pay the money. Ah you got to sign this agreement and agree to forfeit what they seized at the jail, they get to keep that. That's the deal. And we got to do this by Tuesday at 5 o'clock to get this done."

      o.     On or about August 21, 2018, at approximately 1:47 p.m., O'STEEN sent SIEGMEISTER a text message that said, "Send me deferred pros agreement please."

      p.     On or about August 21, 2018, at approximately 1:50 p.m., SIEGMEISTER sent O'STEEN a text message that said, "I haven't done it yet. You told me you were waiting on your client and Mr Green. I will do it if we have a deal. I'll call judge [J] and advise it's been sent to pti [pre-trial intervention] if we have an agreement. It will probably be tomorrow before I can send it."

      q.     On or about August 21, 2018, at approximately 1:58 p.m., SIEGMEISTER sent O'STEEN a text message that said, "Does that mean you have your money?"

      r.     On or about August 23, 2018, Client B delivered $30,000

cash to O'STEEN at a car dealership in Columbia County, Florida.

s.      On or about August 27, 2018, at approximately 10:22 a.m.,
O'STEEN sent a text message to SIEGMEISTER that said, "When will I have
pti agreement on [Client B]? He is ready to leave for cali."

t.      On or about September 4, 2018, Client B delivered another
$30,000 cash to O'STEEN at O'STEEN's law office in Dixie County, Florida.

u.      On or about September 4, 2018, at approximately 12:05
p.m., SIEGMEISTER sent O'STEEN a text message that said, "You still on
for next Wednesday? Should've charged you triple based on your windfall lol."

v.      On or about September 4, 2018, at approximately 12:07
p.m., SIEGMEISTER sent O'STEEN a text message that said, "Hey, my wife
works for rep [h.] in the panhandle and has been tasked with raising 2500 for
the local Republican Party so they can get matching funds. Want to help me
raise it so I don't have to do some event. I was going to ask [V.] as well. I didn't
think it was that much. Let me know. Call me."

w.      On or about September 4, 2018, at approximately 4:17 p.m.,
SIEGMEISTER sent a text message to O'STEEN that said, "So. You get what
you want and make a mint and I'm persona non grada [sic]."

x.      On or about September 12, 2018, SIEGMEISTER sold
O'STEEN and O'STEEN's father a bull for $4,000.

y.      Approximately four days later, on or about September 16, 2018, O'STEEN sold the same bull to a farmer for $3,500.

z.      On or about September 18, 2018, at approximately 12:58 p.m., SIEGMEISTER sent a text message to O'STEEN that said, "Did you mail that $? My wife is freaking out because Thursday is deadline. Our mail hasn't run today yet."

aa.      In or around January 2019, O'STEEN was retained to represent Client C, who had been charged by the State Attorney's Office with battery and trespass after warning.

bb.      On or about January 30, 2019, at approximately 5:24 p.m., SIEGMEISTER sent a message to O'STEEN regarding Client C's criminal case, that said, in part, "Tell [H.] and [D.] [friends of Client C] hi. Tell them they're welcome for the PTI on the guy [Client C] who beat some old man on video. It's already been approved. They shouldn't have any complaints."

cc.      Despite a subordinate Assistant State Attorney advising her boss, SIEGMEISTER, that the victims did not want Client C to get PTI [pre-trial intervention], on or about March 11, 2019, at approximately 5:38 p.m., SIEGMEISTER texted O'STEEN, "The PTI is approved."

dd.      On or about March 11, 2019, at approximately 5:39 p.m., SIEGMEISTER texted O'STEEN, "FYI I'm raising money and getting

11

petitions again. Call me or text me when is a good time to come down and catch up with you and the crew."

ee.     On or about March 13, 2019, at approximately 2:33 p.m., SIEGMEISTER sent a text message to O'STEEN that said, "Let me know if you're serious about my bull."

ff.     On or about March 22, 2019, at approximately 2:44 p.m., SIEGMEISTER sent a text message to O'STEEN that said, "By the way, that PTI is causing serious heartburn. That mans wife is yelling, screaming, calling the press, the AG etc. And no, I'm not revoking offer of PTI for [D.]'s sisters boyfriend [Client C]. Just FYI."

All in violation of 18 U.S.C. § 371.


## COUNT TWO
**(Conspiracy to Interfere with Commerce by Extortion)**

### A.     **Introduction**

At all times material to this Indictment:

1.     Paragraphs 1 through 6 of Count One of this Indictment are realleged and reincorporated as if fully set forth herein.

### B.     **Charge**

2.     From an unknown date but at least as early as on or about August 9, 2018, and continuing through on or about May 16, 2019, in the Middle

District of Florida and elsewhere, defendants,

**JEFFREY ALAN SIEGMEISTER**
**and**
**MARION MICHAEL O'STEEN,**

did knowingly combine, conspire, confederate, and agree with each other and others, both known and unknown to the Grand Jury, to obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as such terms are defined in 18 U.S.C. § 1951, that is, the defendants, acting in concert with one another, obtained property not due defendants from Client B, with Client B's consent, through the wrongful use of fear of economic harm and under color of official right.

All in violation of 18 U.S.C. § 1951(a).

## COUNT THREE
### (Interference with Commerce by Extortion)

### A.    Introduction

At all times material to this Indictment:

1.      Paragraphs 1 through 6 of Count One of this Indictment are realleged and reincorporated as if fully set forth herein.

### B.    Charge

2.      From an unknown date but at least as early as on or about August

9, 2018, and continuing through on or about May 16, 2019, in the Middle District of Florida and elsewhere, the defendants,

**JEFFREY ALAN SIEGMEISTER**
**and**
**MARION MICHAEL O'STEEN,**

aiding and abetting each other, did knowingly obstruct, delay, and affect, and attempt to obstruct, delay, and affect, in any way and degree, commerce and the movement of articles and commodities in commerce by extortion, as such terms are defined in 18 U.S.C. § 1951, that is, the defendants, acting in concert with one another, obtained property not due defendants, from Client B with Client B's consent, under color of official right and through fear of economic harm.

In violation of 18 U.S.C. §§ 1951(a) and 2.

## COUNT FOUR
### (Failure to File Form 8300)

### A.    Introduction

1.    Paragraphs 1 through 6 of Count One of this Indictment are realleged as if fully set forth herein.

### B.    Charge

2.    On or about August 23, 2018, in the Middle District of Florida,

14

defendant,

## MARION MICHAEL O'STEEN,

who was engaged in a trade and business, that is M. Michael O'Steen, P.A.,

and who in the course of such trade and business, received more than $10,000

in currency in one transaction, did willfully fail to file a report, to wit: Form

8300, with the Financial Crimes Enforcement Network, within fifteen days after

the currency is received, as prescribed by the applicable regulations under 31

U.S.C. § 5331(b).

All in violation of 31 U.S.C. §§ 5331 and 5322, and 31 C.F.R.

§ 1010.330(a).

## COUNT FIVE
### (Conspiracy to Commit Federal Program Bribery)

#### A.    Introduction

At all times material to this Indictment:

1.    Paragraphs 1 through 6 of Count One of this Indictment are realleged

and incorporated as if fully set forth herein.

2.    Ernest Maloney Page, IV, ("Page") was a criminal defense

attorney until or about March 31, 2019, practicing law in the Middle District of

Florida, and elsewhere, and a licensed member of The Florida Bar.

3.    "Client D" was a resident of the Middle District of Florida who

15

managed a family-owned tractor dealership in the Middle District of Florida.

Client D retained Page to represent him after Client D was arrested on two

separate occasions and charged by the State Attorney's Office for Driving Under

the Influence ("DUI") in Madison County, Florida.

## B.    The Conspiracy

4.    Beginning in or around July 2017, and continuing through on or

about March 12, 2020, in the Middle District of Florida, and elsewhere,

defendant,

### JEFFREY ALAN SIEGMEISTER,

did knowingly and willfully combine, conspire, confederate, and agree with

Page and others, both known and unknown to the Grand Jury, to commit

certain offenses against the United States, that is bribery concerning programs

receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(B).

## C.    Manner and Means

5.    The manner and means by which the conspirators sought to

accomplish the purpose of the conspiracy included, among other things:

a.    It was a part of the conspiracy that SIEGMEISTER would

and did use his position as the State Attorney to solicit, accept, and agree to

accept bribes in return for the favorable disposition of criminal cases.

b.    It was further part of the conspiracy that SIEGMEISTER

16

and Page would and did discuss and agree that Page would provide and promise to provide a bribe from Client D in exchange for SIEGMEISTER reducing or dismissing the charges brought by the State Attorney's Office against Client D.

      c.     It was a further part of the conspiracy that Page would and did relay messages from SIEGMEISTER to Client D for the purpose of facilitating a bribe to SIEGMEISTER in exchange for favorable dispositions of Client D's cases.

      d.     It was further part of the conspiracy that Client D would and did provide and promise to provide a bribe to SIEGMEISTER, in exchange for disposition of the charges brought by the State Attorney's Office against Client D.

      e.     It was a further part of the conspiracy that the conspirators would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the object of the conspiracy and the acts committed in furtherance thereof.

### D.   Overt Acts

6.     In furtherance of the conspiracy and to effect the objects thereof, the conspirators committed and caused to be committed, within the Middle District of Florida and elsewhere, the following overt acts, among others:

      a.     In or around July 2017, Page told SIEGMEISTER to visit

17

Client D at Client D's family's tractor dealership because SIEGMEISTER wanted a new tractor.

        b.      In or around September 2017, SIEGMEISTER sent his wife to Client D's tractor dealership to obtain an estimate for the purchase of a tractor and accessories.

        c.      In or around September 2017, SIEGMEISTER told Page that SIEGMEISTER would reduce one of Client D's pending DUI cases in exchange for a bribe in the form of a $10,000 discount on the purchase of a tractor and accessories, and SIEGMEISTER would reduce both of Client D's pending DUI cases in exchange for a bribe in the form of a $20,000 discount on the purchase of a tractor and accessories.

        d.      In or around September 2017, Page relayed to Client D SIEGMEISTER's offer to receive a bribe from Client D.

        e.      In or around September 2017, Client D agreed to pay SIEGMEISTER a bribe in exchange for reducing both of his criminal DUI cases pending before the State Attorney's Office, specifically to provide SIEGMEISTER with a $20,000 discount on a tractor and tractor accessories.

        f.      In or around September 2017, Page told SIEGMEISTER that Client D had agreed to pay SIEGMEISTER a bribe in the form of a $20,000 discount on a tractor and accessories in exchange for reducing both of Client

D's pending DUI charges.

g.   On or about September 20, 2017, SIEGMEISTER's wife purchased a tractor and accessories from Client D, the price of which was discounted by approximately $20,000.

h.   On or about September 28, 2017, SIEGMEISTER, Client D, and Page signed an Offer of Plea, which provided that Client D would plead no contest to the charges of reckless driving with alcohol and refusal to submit to blood alcohol test in exchange for both DUI charges being dismissed by the State Attorney's Office.

i.   On or about September 28, 2017, SIEGMEISTER agreed in the Offer of Plea that Client D receive a sentence of 12 months' supervised probation with no incarceration.

All in violation of 18 U.S.C. § 371.


## COUNT SIX
### (Federal Program Bribery)

At all times material to this Indictment:

### A.   Introduction

1.   Paragraphs 1 through 3 of Count Five of this Indictment are realleged and incorporated as if fully set forth herein.

## B.    Charge

2.      From in or around July 2017, and continuing through on or about

September 28, 2017, in the Middle District of Florida, and elsewhere,

defendant,

### JEFFREY ALAN SIEGMEISTER,

did knowingly, willfully, and corruptly solicit and demand for his own benefit,

and accept and agree to accept something of value, that is, an approximately

$20,000 discount on a tractor from Client D, from someone other than the State

Attorney's Office for the Third Judicial Circuit of Florida, intending to be

influenced and rewarded in connection with a business, transaction, and series

of transactions of the State Attorney's Office for the Third Judicial Circuit of

Florida, involving something worth $5,000 or more, that is the criminal matter

of Client D, and during each of the one-year periods of July 1, 2016, through

June 30, 2017, and July 1, 2017, through June 30, 2018, the State Attorney's

Office for the Third Judicial Circuit of Florida received in excess of $10,000

under Federal programs involving a grant, contract, subsidy, loan, guarantee,

insurance, and other form of Federal assistance.

In violation of 18 U.S.C. §§ 666(a)(1)(B) and 2.

20

## COUNTS SEVEN THROUGH NINE
### (Wire Fraud)

### A.    Introduction

At all times material to this Indictment:

1.    Paragraph 1 of Count One of this Indictment is realleged and reincorporated as if fully set forth herein.

2.    L.T. was an elderly man with physical and mental deficiencies who resided in Columbia County, Florida, for whom SIEGMEISTER was appointed as legal guardian by the Circuit Court of the Third Judicial Circuit, in and for Columbia County, Florida.

### B.    The Scheme and Artifice

3.    From an unknown date, but at least from in or about January 2010, continuing through and including in or around April 2016, in the Middle District of Florida, and elsewhere, the defendant,

### JEFFREY ALAN SIEGMEISTER,

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises.

### C.    Manner and Means of the Scheme

4.    The manner and means by which the defendant and others carried out the scheme and artifice included, among other things:

a. It was part of the scheme and artifice that SIEGMEISTER would and did petition the Circuit Court of the Third Judicial Circuit, in and for Columbia County, Florida, to become the guardian for L.T., who was then 80 years of age, on which petition SIEGMEISTER noted that L.T. owned 10,248 shares of Coca-Cola Common Stock, with a value of $664,751.93.

b. It was further part of the scheme and artifice that SIEGMEISTER would and did petition the court for expenses associated with the preparation of a will for L.T.

c. It was further part of the scheme and artifice that SIEGMEISTER would and did cause to be drafted a Last Will and Testament for L.T. that:

i. named SIEGMEISTER's relative as the sole beneficiary of L.T.'s assets; and

ii. designated SIEGMEISTER as the Personal Representative of the L.T. Estate.

d. It was further part of the scheme and artifice that, while still serving as the court-appointed voluntary guardian for L.T., SIEGMEISTER would and did convert and caused to be converted L.T.'s assets into cash, which was deposited to accounts under SIEGMEISTER's control, utilizing interstate wire transmissions.

e.      It was further part of the scheme and artifice that after converting L.T.'s assets to cash and depositing the cash to accounts under SIEGMEISTER's control, SIEGMEISTER would and did purchase assets for himself, utilizing interstate wire transmissions.

f.      It was further part of the scheme and artifice that SIEGMEISTER would and did file a Final Accounting of Guardian Property with the Probate Division of the Circuit Court for Columbia County, Florida, which contained materially false and fraudulent expense information for the L.T. Guardianship.

g.      It was further part of the scheme and artifice that SIEGMEISTER filed or caused to be filed, a Petition for Administration with the Probate Division of the Circuit Court of the Third Judicial Circuit, in and for Columbia County, Florida, which contained materially false and fraudulent asset and expenditure information for the L.T. Estate.

h.      It was further part of the scheme and artifice that SIEGMEISTER's misrepresentations concealed the diversion of L.T.'s assets, allowing the Probate Division of the Circuit Court for Columbia County, Florida, to Order L.T.'s Last Will and Testament to Probate and appointing SIEGMEISTER as Personal Representative, and as such SIEGMEISTER would continue to divert the assets of L.T.'s Estate to himself and to his relative

23

without detection.

        i.     It was further part of the scheme and artifice that, while serving as the Personal Representative of the L.T. Estate, SIEGMEISTER diverted assets from the L.T. Estate to accounts controlled by SIEGMEISTER and his relative, utilizing interstate wire transmissions.

        j.     It was further part of the scheme and artifice that SIEGMEISTER would not and did not report to the Probate Division of the Circuit Court for Columbia County, Florida that he and his relative were receiving significant financial benefits from L.T. and his Estate despite the conflict of interest and violations of Florida State statutes concerning Guardianships.

        k.     It was further part of the scheme and artifice that SIEGMEISTER would not and did not report and cause the reporting of the funds he diverted to himself from L.T. and the L.T. Estate as income on his federal income tax returns in tax years 2015 and 2016.

        **D.**    **Interstate Wire Transmissions**

    5.     On or about the date listed below in each count, in the Middle District of Florida, and elsewhere, the defendant,

**JEFFREY ALAN SIEGMEISTER,**

for the purpose of executing the aforementioned scheme and artifice, knowingly

24

and intentionally transmitted and caused to be transmitted by means of wire communication interstate commerce, the writings, signs, and signals associated with funding the below-listed checks:

| COUNT | ON OR ABOUT | TRANSACTION | PAYOR ACCOUNT | DEPOSIT ACCOUNT |
|---|---|---|---|---|
| SEVEN | February 25, 2016 | Deposit of Check No. 122937, in the amount of $313,816.52, payable to "Jeffrey A Siegmeister Per Rep Est L.W.T." from Computershare, Inc. account held for the benefit of The Coca-Cola Company | Bank of America account ending in 7385, held by Computershare, Inc. for the benefit of The Coca-Cola Company | First Federal Bank account ending in 4706, held by The Siegmeister Law Firm PA (Trust Account IOTA) |
| EIGHT | March 7, 2016 | Deposit of Check No. 1219, in the amount of $264,500, payable to "N.A.B. or Jeffrey A. Siegmeister" from The Siegmeister Law Firm PA IOTA Trust Account | First Federal Bank account ending in 4706, held by The Siegmeister Law Firm PA (Trust Account IOTA) | Columbia Bank account ending 8160, held by Jeffrey A Siegmeister and J.L.S. |

| NINE | March 24, 2016 | Deposit of Check No. 6585699, in the amount of $11,634.47, payable to "Jeffrey A. Siegmeister Per Rep Est L.W.T." from Computershare, Inc. account held for the benefit of The Coca-Cola Company | Harris Central, N.A. account ending in 5361, held by Computershare, Inc. for the benefit of The Coca-Cola Company | First Federal Bank account ending 4706 held by The Siegmeister Law Firm PA (Trust Account IOTA) |

All in violation of 18 U.S.C. § 1343.

## COUNT TEN
### (Filing False Tax Return)

### A.    Introduction

1.     Paragraphs 1 through 5 of Counts Seven through Nine of this Indictment are realleged as if fully set forth herein.

### B.    Charge

2.     On or about April 17, 2016, in the Middle District of Florida, and elsewhere, the defendant,

**JEFFREY ALAN SIEGMEISTER,**

did willfully make and subscribe, and cause to be made and subscribed, a 2015 U.S. Individual Income Tax Return, IRS Form 1040, which was verified by a

written declaration that it was made under penalties of perjury, and which he did not believe to be true and correct as to every material matter, that the return was filed with the Internal Revenue Service, and reported his total income on Line 22 of Form 1040 as $150,313, whereas, as he then and there well knew and believed his total income was greater than reported.

In violation of 26 U.S.C. § 7206(1).

### COUNT ELEVEN
### (Filing False Tax Return)

#### A.    Introduction

1.    Paragraphs 1 through 5 of Counts Seven through Nine of this Indictment are realleged as if fully set forth herein.

#### B.    Charge

2.    On or about April 16, 2017, in the Middle District of Florida, and elsewhere, the defendant,

**JEFFREY ALAN SIEGMEISTER,**

did willfully make and subscribe, and cause to be made and subscribed, a 2016 U.S. Individual Income Tax Return, IRS Form 1040, which was verified by a written declaration that it was made under penalties of perjury, and which he did not believe to be true and correct as to every material matter, that the return was filed with the Internal Revenue Service, and reported his total income on

Line 22 of Form 1040 as ($150,128), whereas, as he then and there well knew and believed his total income was greater than reported.

In violation of 26 U.S.C. § 7206(1).

### COUNT TWELVE
### (Filing False Tax Return)

#### A.    Introduction

1.     Paragraphs 1 through 3 of Count Five of this Indictment are realleged as if fully set forth herein.

#### B.    Charge

2.     On or about March 13, 2018, in the Middle District of Florida, and elsewhere, the defendant,

#### JEFFREY ALAN SIEGMEISTER,

did willfully make and subscribe, and cause to be made and subscribed, a 2017 U.S. Individual Income Tax Return, IRS Form 1040, which was verified by a written declaration that it was made under penalties of perjury, and which he did not believe to be true and correct as to every material matter, in that the return was filed with the Internal Revenue Service, and reported his total income on Line 22 of Form 1040 as $24,146, whereas, as he then and there well knew and believed his total income was greater than reported.

In violation of 26 U.S.C. § 7206(1).

## FORFEITURE

1.    The allegations contained in Counts One through Three and Counts Five through Nine, are incorporated by reference for the purpose of alleging forfeiture, pursuant to provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2.    Upon conviction of a conspiracy of the violation of 18 U.S.C. § 1952, in violation of 18 U.S.C. § 371, charged in Count One, and/or upon conviction of a conspiracy of, or a violation of, 18 U.S.C. § 1951, charged in Counts Two and Three, the defendants, JEFFREY ALAN SIEGMEISTER and MARION MICHAEL O'STEEN, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3.    Upon conviction of a conspiracy of the violation of 18 U.S.C. § 666(a)(1)(B), in violation of 18 U.S.C. § 371, charged in Count Five, and/or up conviction of a violation of 18 U.S.C. § 666(a)(1)(B), charged in Count Six, the defendant, JEFFREY ALAN SIEGMEISTER, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

29

4.     Upon conviction of a violation of 18 U.S.C. § 1343, charged in Counts Seven through Nine, the defendant, JEFFREY ALAN SIEGMEISTER, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

5.     The property to be forfeited includes, but is not limited to, the following:

a.     an order of forfeiture in the amount of at least $60,000.00 which represents the amount of proceeds the defendants, JEFFREY ALAN SIEGMEISTER and MARION MICHAEL OSTEEN, obtained as a result of the offenses charged in Counts One through Three;

b.     an order of forfeiture in the amount of at least $27,000.00 which represents the amount of proceeds the defendant, JEFFREY ALAN SIEGMEISTER, obtained as a result of the offenses charged in Counts Five and Six;

c.     an order of forfeiture in the amount of $640,995.71, which represents the amount of  proceeds the defendant, JEFFREY ALAN SIEGMEISTER, obtained as a result of the offenses charged in Counts Seven through Nine;

d.     7,372 shares of The Coca-Cola Company common stock held by Computershare Shareholder Services, Inc., account Number C0006753353, held in the names of Nancy A. Bowen & William G Bowen Joint Tenants; and

e.     Real property, including all improvements thereon and appurtenances thereto, located at 2637 145th Road, Live Oak, Suwannee County, FL 32060, more particularly described as:

a) The N½ of NE¼ of SE¼ of Section 18, Township 1 South, Range 13 East, Suwannee County, Florida;

and

b) The SW¼ of NE¼ and the North 330 feet of the NW¼ of SE¼ of Section 18, Township 1 South, Range 13 East, Suwannee County, Florida.

Parcel Identification Number: 0467500-3000.

6.    If any of the property described above, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the
provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL,

Foreperson

MARIA CHAPA LOPEZ
United States Attorney

By:

Kelly S. Karase
Assistant United States Attorney

By:

David Mesrobian
Assistant United States Attorney

By:

Frank Talbot
Assistant United States Attorney
Chief, Jacksonville Division

32